UNITED STATES, Appellee

v

FRANK G. VARNADORE, Ship's Serviceman Third Class, U. S. Navy, Appellant

9 USCMA 471, 26 CMR 251

No. 11,301

Decided July 22, 1958

*Commander Charles Timblin,* USN, argued the cause for Appellant, Accused.

*Major Charles R. Larouche,* USMC, argued the cause for Appellee, United States. With him on the brief was *Commander Craig McKee,* USN.

### Opinion of the Court

ROBERT E. QUINN, Chief Judge:

The accused pleaded guilty to an unauthorized absence from June 4, 1956, to August 21, 1957, in violation of Article 86, Uniform Code of Military Justice, 10 USC § 886. The question before us concerns the correctness of an instruction of the law officer in regard to the sentence.

After announcement of the findings of guilty and in accordance with the regular procedure, trial counsel read the data from the charge sheet. This showed that the accused was 34 years of age; that he had completed 13 years of previous military service; that his current tour began in March 1951; and that he had been in confinement in the station brig for approximately two months before trial. No evidence of previous convictions was presented, but an entry in the service record showed that the accused's absence had been terminated by apprehension by an agent of the Federal Bureau of Investigation. On behalf of the accused it was shown that he was entitled to wear the following medals: American Campaign, Asiatic-Pacific Campaign, European-African-Middle Eastern Campaign, World War II Victory Medal, Good Conduct, and Navy Occupation Service Medal with European clasp. It was also shown that the accused served with the 6th Fleet in the Middle Atlantic from May 2, to August 19, 1955. Additionally, Yeoman First Class A. W. McBride testified that he had served in the Navy for 18 years. He knew the accused and had served with him between 1950 and 1951 at Port Lyautey, French Morocco. In his opinion, the accused was an "outstanding man" who presented an "excellent appearance" and whose "military manner was actually . . . a credit to the Navy." The accused also testified. Among other things he said he enlisted in the Navy the day after Pearl Harbor; after completing basic training he was sent to sea as a member of a gun crew on board merchant ships, tankers and transports. Later he was assigned to the Office of Strategic Services in Cairo, where he served until the Germans capitulated in Greece. He was "commended . . . for services for taking German vessels in the German occupied waters of Greece." In the course of his service he obtained two separate honorable discharges. The accused concluded his testimony with the statement that it was his "chief desire" to be retained in the service.

Defense counsel summed up the defense case by "specifically ask[ing] for retention in the service" of the accused. In its closing argument, the prosecution stressed the length of the absence and maintained that since no explanation had been offered it "call[ed] for a bad conduct discharge." The law officer instructed the court-martial that the maximum sentence was a dishonorable discharge, total forfeitures, confinement at hard labor not to exceed one year, and reduction to lowest enlisted pay grade. He also advised the court that the accused had admitted guilt and thereby saved the Government time and expense.

After the court had been in closed session for twenty-one minutes it reopened. A discussion took place between the law officer and the court members in regard to the sentence. The part important to this appeal is set out below.

"PRES: Well, could you give him one year at hard labor without dishonorable discharge?

"LO: Any period of confinement greater than six months without being accompanied by a punitive discharge is an illegal sentence."

The court retired for further deliberations. Twenty-five minutes later it returned and announced that it had sen-

472

tenced the accused to a bad-conduct discharge, confinement at hard labor for one year, forfeiture of all pay and allowances, and reduction to seaman recruit. The question before us is whether the law officer committed prejudicial error by instructing the court-martial that "Any period of confinement greater than six months without being accompanied by a punitive discharge is an illegal sentence."

In the imposition of punishment, a court-martial is subject to three general limitations. First, it cannot adjudge a punishment "forbidden" by the Uniform Code of Military Justice. Second, it cannot exceed the limitations prescribed by the Uniform Code for the particular court. Articles 18, 19 and 20, Uniform Code of Military Justice, §§ 818, 819 and 820. Third, it cannot exceed "such limits as the President may prescribe" for the offense of which the accused has been convicted. Article 56, Uniform Code of Military Justice, 10 USC § 856; United States v Stiles, 9 USCMA 384, 26 CMR 164. The Uniform Code does not forbid a general court-martial from imposing a sentence to confinement in excess of six months without a punitive discharge. As far as the Code is concerned, therefore, there is no justification for the law officer's instruction that it is "illegal" to adjudge such a sentence. However, the Manual for Courts-Martial, United States, 1951, sets out the President's limitations on punishment. The Table of Maximum Punishments, contained in paragraph 127c, provides the limit of punishment for enumerated offenses. The limit prescribed for an unauthorized absence for the length of time alleged is dishonorable discharge, total forfeiture, and confinement at hard labor for one year. Ibid, Section A, page 220, as amended by Executive Order 10565, September 28, 1954, 19 FR 6299. The Manual has other provisions on punishment. Chapter XXV contains a number of paragraphs pertinent to the sentence which are titled "General Limitations," "Miscellaneous

Limitations," and "Maximum Limits of Punishments." Paragraph 127. Material here is the subsection on general limitations (paragraph 127b). In part, it provides as follows:

"A court shall not, by a single sentence which does not include dishonorable or bad conduct discharge, adjudge against an accused:

. . . . .

"Confinement at hard labor for a period greater than six months—however, this limitation shall not apply in the case of a prisoner whose punitive discharge has been executed, a civilian, or a prisoner of war."

The answer to the question on this appeal turns on the meaning and effect of this provision in relation to the Uniform Code.

The matter is not new to this Court. In an early case the provision came before us by way of a certificate of review filed by The Judge Advocate General of the Navy. United States v Brasher, 2 USCMA 50, 6 CMR 50.[1] The accused was sentenced by a general court-martial to a bad-conduct discharge, partial forfeitures, and confinement at hard labor for ten months. On review, the board of review modified the sentence by eliminating the discharge. The Judge Advocate General of the Navy asked this Court to determine whether the sentence as affirmed by the board of review was legal. We noted that the matter was "not the subject of express provision in the Uniform Code of Military Justice, but is entirely a creature of the Manual for Courts-Martial." We went on to hold that a sentence to confinement in excess of six months which did not include a discharge was "illegal" because it violated the Manual provision. Both parties to the appeal had proceeded on the assumption that the Manual provision operated as an absolute limitation upon the power of a court-martial to adjudge a sentence to confinement in excess of six months, without at the same time ad-

---

[1] Other cases involving the paragraph which were also before us, but in which the issue of legality of the provision was not specifically considered, are United States v Long, 4 USCMA 101, 15 CMR 101, and United States v Linder, 6 USCMA 669, 20 CMR 385.

judging a punitive discharge. We accepted that assumption, although we pointed out that the provision was based upon a "policy" determination that if an accused is in confinement for more than six months, "prima facie, at least, he must be deemed unfit for further service and discharged." United States v Brasher, supra, page 52. We are now asked to examine the correctness of the assumption and reconsider our decision.

The argument against the view that the Manual provision constitutes a limitation of the court-martial's sentence power takes two forms. One is based upon the practical effect of the provision. It is contended that the Manual appears to fix a minimum rather than a maximum sentence. United States v Ridge, CM 399603, May 9, 1958, dissenting opinion, Member Dwinell. The second aspect of the argument classifies the provision as a policy directive which, when presented to the court members in a pending case, offers a fair risk of influencing their judgment in fixing an appropriate sentence below the maximum prescribed for the particular offense. Expositions of this approach are found in the separate opinion of Member Jones in United States v Perez, NCM 57–03695, March 19, 1958, and in the dissent of Member Neff in United States v Bolduc, NCM 58–00954, May 19, 1958.

The joinder of a punitive discharge to an extensive period of confinement is not new to military law. Even before Congress gave the President power to set maximum punishments it was observed that courts-martial "almost invariably add[ed] the penalty of dishonorable discharge." Dig Op, JAG, Army, 1880, Discharge, § 9, page 234; see also Davis, A Treatise on the Military Law of the United States, 1st ed, page 183. The choice, however, rested exclusively with the court-martial. In exercising its judgment, the court could also defer execution of the discharge until completion of confinement, thereby according the accused an opportunity to obtain relief before execution of the discharge. See United States v Cleckley, 8 USCMA 83, 86, 23 CMR 307, dissenting opinion of Chief Judge Quinn; Dig Op, JAG, Army, 1868, Discharge, § 3, page 144; Pay and Allowances, § 35, page 271; (5), (6), page 361; Davis, op cit., page 183. The rule was not changed when Congress first granted power to the President to limit sentences. The power was conferred with respect to the Army by Act of September 27, 1890, 26 Stat 491. It provided as follows:

"That whenever by any of the Articles of War for the government of the Army the punishment on conviction of any military offense is left to the discretion of the court martial the punishment therefor shall not, in time of peace, be in excess of a limit which the President may prescribe."[2]

Pursuant to the Congressional grant of authority, the President promulgated an Executive Order prescribing the limits of punishment for particular offenses. He said nothing about the necessity of adjudging a discharge if the court-martial desired to impose a sentence to confinement in excess of a specified period. Executive Order February 26, 1891, published as General Order 21, 1891, Headquarters Army. Nor did he mention the matter in amendments to the Executive Order in succeeding years. Executive Order March 20, 1895, Executive Order March 30, 1898, Executive Order March 26, 1901, Executive Order June 12, 1905. A similar grant of power was made with regard to the Navy and the implementing executive order also made no mention of the subject. 28 Stat 689.

To remedy defects in the existing statutes, Congress revised the Articles of War as of March 1, 1917. Revised Statutes Section 1342; Act of August 29, 1916, 39 Stat 657, Article 46. Revised Article of War 45 carried over the substance of the Act of September 27, 1890.[3] The Manual for Courts-Martial, U. S. Army, 1917, was promulgated by

[2] Three days later Congress substituted the summary court-martial for the garrison or regimental court in the Army and empowered the President to "prescribe specific penalties for such minor offenses" as would come before the court. Act of October 1, 1890, 26 Stat 648.

[3] Article of War 45 provided as follows: "Whenever the punishment for

the Secretary of War for "information and guidance" of the Army in carrying out the revised Articles of War. The Manual includes President Wilson's Executive Order of December 15, 1916, prescribing punishment limits. Article III of that order is captioned "General Limitations" and sets out a provision against confinement in excess of six months without a punitive discharge in virtually the same language as that in the 1951 Manual.[4]

A significant insight into the meaning of the provisions appears in the Introduction part of the Manual. Referring to the special court, the Manual says (pages XI–XII):

"A disciplinary court, intermediate between the general and summary courts, with adequate power to impose disciplinary punishments but without the power to adjudge dishonorable discharge, is provided for the trial of offenses where the retention of the offender with his command, to be disciplined rather than his dishonorable discharge, is contemplated, *leaving the general court-martial with its extended jurisdiction to be resorted to in grave cases calling for discipline, dishonorable discharge, or prolonged detention in confinement with or without dishonorable discharge,* and the summary court for the trial of minor offenses calling for light punishments of confinement and forfeiture." [Emphasis supplied.]

From the comment in the 1917 Manual, it would appear the Army establishment did not believe the Executive Order curtailed the power to impose confinement without discharge which had been exercised by general courts-martial for over 100 years. In the Navy certain sentences which did not include a punitive discharge with confinement were simply described as "irregular" or "undesirable" because inconsistent with Department policy. CMO 8–1921, page 14; CMO 5–1923, page 9; see also CMO 153–1919, page 31; CMO 5–1923, page 9; *Naval Justice,* chapter 13, section D

(1949). Just when the provision came to be regarded as a limitation on the court-martial's power is not clear. Recently a board of review noted that if the provision were new to military law it "might be inclined to hold" it was contrary to the Uniform Code. United States v Bennett, CM 398277, April 21, 1958. And in another case, the Government itself contended the President lacked authority to promulgate a related provision. United States v Morlan, 24 CMR 390. Be that as it may, the real question is whether the Manual provision, whatever its original purpose and effect, is consonant with, or contrary to, the Uniform Code of Military Justice. United States v Rosato, 3 USCMA 143, 11 CMR 143; United States v Jenkins, 7 USCMA 261, 22 CMR 51.

Provisions of the Uniform Code which relate to the same subject matter must be considered together. We start first with the Articles providing for the punishment of particular conduct. With certain exceptions, each such Article provides that the offender "shall be punished as a court-martial may direct." However, each type of court-martial, general, special and summary, must exercise its sentence power "under such limitations as the President may prescribe." Articles 18, 19 and 20, Uniform Code of Military Justice, 10 USC §§ 818, 819, 820. What did Congress mean by this provision? In our opinion, the phrase simply refers to the provisions of Article 56 which prohibit courts-martial from exceeding the limits set by the President for the particular offense charged. For example, the offense here is unauthorized absence. The limit set by the President for that offense for the period alleged is dishonorable discharge, total forfeiture, and confinement at hard labor for one year. By reason of Article 56, courts-martial cannot exceed the limits prescribed "for that offense." But neither Article 56 nor the specific limits prescribed by the President for an unauthorized absence restrict the court-

---

a crime or offense made punishable by these articles is left to the discretion of the court-martial, the punishment shall not, in time of peace, exceed such limit

or limits as the President may from time to time prescribe."

[4] Manual for Courts-Martial, U. S. Army, 1917, paragraph 349.

martial's choice as to the three items of punishment. According to the Government's argument, such restriction appears in the "general limitation." If we read the general into the specific, the limitation on confinement would be substantially as follows: The maximum period of confinement at hard labor for the unauthorized absence charged is six months, but if a punitive discharge is included in the sentence the maximum period of confinement is one year. Is a limitation of this kind consonant with the Uniform Code?

Congress has provided for automatic review by a board of review. Review is had in every case in which the approved sentence "extends to . . . dishonorable or bad-conduct discharge, or confinement for one year or more." Article 66, Uniform Code of Military Justice, 10 USC § 866. Manifestly, Congress intended either of the alternatives to be the basis for automatic review. It plainly contemplated that courts-martial would, in individual cases, adjudge a sentence which did not include a punitive discharge but carried confinement for more than one year. However, if because of the Manual provision, a court-martial cannot lawfully impose upon military accused confinement in excess of six months, without also adjudging a punitive discharge, the confinement basis for review will never apply. So construed, the Manual provision destroys a right granted by Congress to the vast majority of persons subject to the Uniform Code. We are unwilling to adopt that construction and thereby make ineffective an important part of the Uniform Code. United States v Jenkins, supra; United States v Rosato, supra; see also Markham v Cabell, 326 US 404, 90 L ed 165, 66 S Ct 193. We hold, therefore, that it is not illegal for a court-martial to impose a sentence to confinement in excess of six months without also adjudging a punitive discharge. True, an accused sentenced to an extended period of confinement is worthless, and perhaps even a liability, to the services. However, in those instances, the services can separate the accused from the service administratively. See AR 635–5, June 12, 1956; Navy Regulations, 1948, Article 1279; Bureau of Naval Personnel Manual, chapter 10, section 3. We conclude that the law officer's instruction was erroneous and prejudicial. To the extent that United States v Brasher, supra, is inconsistent with this holding, it is overruled.

The decision of the board of review as to the sentence is reversed and the sentence is set aside. A rehearing on the senence may be ordered.

Judge FERGUSON concurs.

LATIMER, Judge (dissenting):

I dissent.

My reasons for doing so are expounded in United States v Holt, 9 USCMA 476, 26 CMR 256, decided this date.