UNITED STATES, Appellee

v

RICHARD E. HOLT, Private, U. S. Army, Appellant

9 USCMA 476, 26 CMR 256

*First Lieutenant James G. Garner* argued the cause for Appellant, Accused. With him on the brief was *Major Edward Fenig*.

*Major Thomas J. Nichols* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel John G. Lee*.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

The accused pleaded guilty to several charges in violation of the Uniform Code of Military Justice. In due course the court-martial returned findings of guilty on all charges. Then, after deliberating in closed session for several minutes in regard to the sentence, it reopened and requested additional instructions from the law officer. The part of the proceedings which is important here is as follows:

"PRES: Is a dishonorable discharge required whenever a sentence of six months or greater is imposed?

"LO: A court shall not, by a single sentence which does not include dishonorable or bad conduct discharge, adjudge against an accused confinement at hard labor for a period greater than six months. Does that answer that question?

"PRES: Does any member of the court wish to have that further explained?

(There was no audible answer.)"

A similar instruction was considered by us in United States v Varnadore, 9 USCMA 471, 26 CMR 251. For the reasons explained therein, the instruction is erroneous. Accordingly, the decision of the board of review as to sentence is reversed and the sentence is set aside. A rehearing on the sentence may be ordered.

Judge FERGUSON concurs.

LATIMER, Judge (dissenting):

I dissent.

Pursuant to an agreement with the convening authority that no sentence greater than dishonorable discharge, total forfeitures, and confinement at hard labor for two years would be approved in his case, the accused entered a guilty plea to four offenses in violation of the Uniform Code of Military Justice, Articles 86, 95, and 121, 10 USC §§ 886, 895, and 921. They were: (1) absenting himself without leave for fourteen days; (2) escape from confinement; (3) theft of an automobile to facilitate his flight; and (4) after apprehension, a second escape from confinement. The maximum imposable punishment for these crimes was dishonorable discharge, total forfeitures, and confinement at hard labor for seven and one-half years. The court-martial sentenced the accused to dishonorable discharge, total forefeitures, and confinement at hard labor for five years, but the convening authority reduced it as agreed. A board of review affirmed a sentence of dishonorable discharge, total forfeitures, and confinement at hard labor for one and one-half years. We granted a petition for review, now set aside the sentence, and hold in effect that a court-martial may impose any authorized sentence of confinement at hard labor upon an accused (in this case five years), without a concomitant punitive discharge.

The holding either reverses or casts serious doubts on United States v Linder, 6 USCMA 669, 20 CMR 385; United States v Long, 4 USCMA 101, 15 CMR 101; United States v Murgaw, 2 USCMA 369, 8 CMR 169; and United States v Brasher, 2 USCMA 50, 6 CMR 50. I believe they announce good law, and I prefer their logic to the doubtful concepts advanced by the Court in this

instance. I have no quarrel with the principle that the Code must take precedence over inconsistent statements of the Manual, but I contend there is a sensible interpretation which permits consistency. The majority opinion stresses the point that Article 66(b), Uniform Code of Military Justice, 10 USC § 866, which gives an automatic appeal to the board of review to those accused whose sentences consist only of confinement for one year or more, will be rendered inoperative if paragraph 127b, Manual for Courts-Martial, United States, 1951, is given effect. That provision states:

"A court shall not, by a single sentence which does not include dishonorable or bad conduct discharge, adjudge against an accused:

. . . . .

"Confinement at hard labor for a period greater than six months—however, this limitation shall not apply in the case of a prisoner whose punitive discharge has been executed, a civilian, or a prisoner of war."

The argument to support the point is bottomed on the supposition that the above-quoted provision makes part of Article 66(b) surplusage because, due to the limitations found in the provision, it cannot happen that an accused will be originally sentenced by the court-martial simply to confinement for one year or more. Thus, the Manual proviso, and our case law supporting it, are cast aside for an asserted inconsistency with the Code—a conclusion which I suggest is a patent non sequitur.

Of course, I agree that a Manual provision cannot be construed so that it renders inoperative, superfluous, void, or ineffective a codal provision. United States v Lucas, 1 USCMA 19, 1 CMR 19. But conversely, if each can be interpreted so as to be consistent with the other, a construction reaching that result is required. I believe such an interpretation is possible in this instance, for it occurs to me that what Congress contemplated in using the alternative rather than a conjunctive connection between the punitive discharge and confinement seg-

ments of sentence in Article 66(b), supra, was something other than that courts-martial should be permitted to impose either, as well as both, to any maximum authorized limit. And a reference to other Articles of the Code will furnish support for my contention that they required the use of the alternative wording in Article 66 to grant all persons subject to the Code an adequate review.

Members in good standing of the armed forces are not the only ones subject to the Code. Article 2, Uniform Code of Military Justice, 10 USC § 802. Thus, under Article 66(b), supra, a prisoner whose punitive discharge has been executed, a civilian, a member of the Public Health Service, or a prisoner of war, who has received an approved sentence to confinement for one year or more, has an equivalent right to automatic review of his case by the board. This happens even though such a person has not been, and could not be, punished with a punitive discharge. It was the situation of individuals in these special circumstances which was the lawmakers' concern in dealing disjunctively with the two parts of a military sentence. This to my mind seems more logical than the supposition that Congress intended to authorize courts-martial to retain in the service anyone, no matter how heinous the crime of which they find him guilty. Under the present construction, a life-termer might be retained in the service, and I advance the thought that Congress never intended to allow that eventuality to happen.

Laying aside the arguments predicated on the appellate processes, I turn to the specific Congressional grants of authority to the President. Articles 18, 19, and 20 of the Code, 10 USC §§ 818, 819, and 820, each provide that the respective courts-martial may, under such limitations as the President prescribes, adjudge any punishment not forbidden by the Code. This delegation of power to restrict the court in the punishment field was granted by Congress at least as early as 1917, and every court-martial Manual published since that time has promulgated the same limitation. Certainly members of

478

Congress should have been familiar with the various enactments over the intervening years, and yet no attempt was made to modify the law. Therefore, I find no reason to now strip the Chief Executive of the power he has long enjoyed, and I am not persuaded to the contrary by the argument that the last above-quoted Articles are merely a restatement of Article 56 of the Code. An interpretation such as that is tantamount to saying that Congress performed an utterly useless act by passing two laws on the same subject.

I do not believe it essential to consider each Article of the Code separately for the reason that those relevant to this discussion in essence provide that the punishment which a court-martial may direct shall not exceed such limits as the President may provide. As I read the language of the Manual, it deals specifically with limitations. Giving the words and phrases employed their ordinary meaning, I understand the provision to state that, if the court-martial concludes a punitive discharge is inappropriate, it may not impose confinement for a period in excess of six months. But, assuming for the sake of argument that there is a permissible construction which would bring about a conflict, that interpretation should be avoided as it violates a cardinal rule of statutory construction. The duty of this Court is to give effect to the Manual and the Code, particularly when both can reasonably stand. Sound common sense dictates that an accused ought not to be retained in the service if he is to be incarcerated for a prolonged period of time, and the Chief Executive has been clothed with the power to fix the limits. By promulgating the rule found in the Manual, the President did not require courts-martial to impose a punitive discharge, but he did limit the period of confinement of an accused if a punitive discharge was not adjudged. Obviously, the provision puts a check on the authority of a court to sentence an accused to one year in confinement without a punitive discharge, but the President has the power to limit the court with respect to all forms of punishment. The power to restrict the whole of the punishment necessarily includes the authority to limit any of its component parts.

One other matter bears consideration. The instruction given by the law officer embodies the principle set out in the Manual, but even though it be conceded arguendo that his instruction was erroneous, I fail to find any prejudice. The accused was sentenced to five years' confinement and a dishonorable discharge. Such a severe sentence could hardly have been affected by the charge given. Implied within the instruction was the advice that a bad-conduct discharge could be adjudged. The court-martial members understood that they had the option to impose either form of punitive discharge, and they selected the more serious of the two. Had there been any doubt in their minds about retaining the accused in the service, I am convinced they would not have imposed the most aggravated form of separation, and the period of confinement would not have been so great.

For the foregoing reasons, I would affirm the decision of the board of review.