UNITED STATES, Appellant

v

VINCIENT D. JOBE, Fireman Apprentice, U. S. Navy, Appellee

10 USCMA 276, 27 CMR 350

No. 12,593

Decided March 13, 1959

*Commander Benjamin H. Berry* argued the cause for Appellant, United States.

*Lieutenant (jg) W. L. Craig* argued the cause for Appellee, Accused.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

At a rehearing on the sentence a general court-martial sentenced the accused to a bad-conduct discharge, forfeiture of all pay and allowances, reduction to the rate of fireman recruit, and confinement at hard labor for nine months. On review of the record of trial, a board of review determined that the law officer erred in certain instructions. Taking "corrective action," it disapproved the punitive discharge. Proceeding under the provisions of Article 67(b)(2), Uniform Code of Military Justice, 10 USC § 867, The Judge Advocate General of the Navy asked this Court to review the board of review's decision on the basis of the following questions:

"a. At the rehearing, did the law officer err when he instructed 'the court is advised that it may not adjudge a sentence including forfeiture of more than two-thirds pay per month without also awarding a punitive discharge'?

"b. If the answer to the first issue is in the affirmative, as a matter of law did the error materially prejudice the substantial rights of the accused?"

The law officer instructed the court-martial on the matters it could consider in deliberating on the sentence. In part, he said:

"*Before the court closes to vote on its sentence, the court is advised that it may not adjudge a sentence including forfeiture of more than two-thirds pay per month without also awarding a punitive discharge.*

• • • • •

"The court is . . . advised . . . the maximum permissible punishment . . . is limited to the original sentence imposed. . . . The court, however, is not bound in any manner to adhere to the sentence which was adjudged by the previous court nor should you be influenced thereby. *There is no minimum sentence.* The court should adjudge a sentence which it considers appropriate for this man, based upon the law and the evidence in this case." [Emphasis supplied.]

The instruction on the permissible amount of forfeiture is based upon paragraph 127*b*, Manual for Courts-Martial, United States, 1951. That paragraph provides as follows:

"A court shall not, by a single sentence which does not include dishonorable or bad conduct discharge, adjudge against an accused:

Forfeiture of pay at a rate greater than two-thirds of his pay per month.

Forfeiture of pay at a rate greater than two-thirds of his pay for six months.

Confinement at hard labor for a period greater than six months—however, this limitation shall not apply in the case of a prisoner whose punitive discharge has been executed, a civilian, or a prisoner of war."

In United States v Varnadore, 9 USCMA 471, 26 CMR 251, we determined that the Uniform Code authorizes a general court-martial to adjudge

confinement of one year without including a punitive discharge in the sentence. As a result, we held it was error to instruct a court-martial in apparent reliance upon the confinement subdivision of paragraph 127, that it was illegal to adjudge a sentence to confinement in excess of six months without including a punitive discharge. We did not have before us, and we did not consider, the effect of an instruction based upon the forfeiture subdivisions of paragraph 127. Consequently, the Government contends that the invalidity of one part of the paragraph does not automatically invalidate different and separable parts. See 50 Am Jur, Statutes, § 174. However, our discussion in United States v Varnadore, supra, of the principal arguments against the restrictions of paragraph 127 has provided a number of boards of review with the starting point for a determination that an instruction along the lines of the forfeiture provisions is error. United States v Perry, NCM 58–02078, December 2, 1958; United States v Isani, CM 399943, August 19, 1958; United States v Darnell, CM 400149, August 13, 1958.

Despite apparent applicability to all courts-martial, the forfeiture provisions are manifestly limited to a general court. Only a general court has statutory power to impose forfeitures at a rate greater than two-thirds and for a period in excess of six months. Compare Article 18 with Articles 19 and 20, Uniform Code of Military Justice, 10 USC §§ 818, 819, 820.

Imposition of total forfeitures by a general court-martial without a punitive discharge is not expressly forbidden by the Uniform Code. Consequently, if the accused is convicted of an offense and the maximum sentence "for that offense" (see Article 56, Uniform Code, supra, § 856) includes total forfeitures, the court can adjudge forfeiture of all pay and allowances, without a punitive discharge. The forfeiture provisions are thus subject to attack for the same reasons advanced against the confinement section, i.e., that they merely set out policy, and

278

they can be construed as providing a mandatory minimum rather than a permissible maximum.

Support for the policy argument is found in Colonel Winthrop's statement that a sentence to total forfeitures without separation from the service "has been commented upon as in general contrary to public policy and detrimental to the interests of the service, and is now most rarely resorted to." Winthrop's Military Law and Precedents, 2d ed, 1920 Reprint, page 429. A similar indication that the provision is a policy matter appears in section 446 of Naval Courts and Boards, 1937. If the provision is only a policy matter, the argument continues, it is error to inject it into the case to influence the court-martial. See United States v Estrada, 7 USCMA 635, 23 CMR 99; United States v Fowle, 7 USCMA 349, 22 CMR 139. There is, however, another fact which must be considered.

A court-martial cannot impose "cruel or unusual punishment." Article 55, Uniform Code of Military Justice, 10 USC § 855. To impose forfeiture of all pay and allowances upon an accused who is required to continue in the service for a substantial period of time might possibly violate this provision. Cf. Trop v Dulles, 356 US 86, 2 L ed 2d 630, 78 S Ct 590. As a matter of fact, the Manual provision seems intended as a safeguard against depriving the accused of all means of support for himself and his family during active duty. Naval Justice, October 1945, page 376; Winthrop, op cit supra, page 429. Thus, some cautionary instruction on the imposition of total forfeitures might be legally desirable and practically beneficial to the accused. See United States v Villa, 10 USCMA 226, 27 CMR 300. The instruction in the instant case, however, does not reach this matter. Rather, it may be interpreted as a direction to the effect that a punitive discharge had to be included in the sentence if the court desired to adjudged forfeiture of all pay and allowances. We agree with the board of review that so construed the instruction is misleading and erroneous. Accordingly, we answer the first certified question in the affirmative.

The second certified question asks whether, as a matter of law, the accused was materially prejudiced by the instructional error. The board of review approved the whole of the sentence except the bad-conduct discharge. If the board of review reached its decision by exercising its discretion, instead of correcting an error of law, a determination by us of the strictly legal effect of the trial error could not change the result. We would then be "merely monitoring . . . a decision which is immaterial to the present controversy." United States v Fisher, 7 USCMA 270, 273, 22 CMR 60. The opinion of the board of review is not clear on the point; it seems to base its action partly on the instructional error and partly on circumstances appealing to its discretion.[1] In such a situation it is appropriate to return the case to the board of review for clarification of its opinion. United States v Moreno, 5 USCMA 500, 18 CMR 124. However, the nature of the error justifies consideration of the certified question.

If we determine that the instructional error presents no possibility of prejudice to the accused, we can return the case to the board of review certain that the action it takes will end further proceedings on the certificate. Thus, if the board of review predicated its action on a misunderstanding of the legal effect of the error it can assess

1. The pertinent part of the board of review's opinion is as follows:

". . . We find that the foregoing instruction is infested with the same infirmity as that which was condemned in Varnadore, supra.

"The original sentence in this case was adjudged on 3 April 1958. The presently approved sentence consists of a bad conduct discharge, confinement at hard labor for nine months, total forfeitures and reduction to the rate of fireman recruit. In view of the length of time which has elapsed since this case was first tried and the subsequent developments not occasioned through any fault of the accused, we deem it advisable to terminate this proceeding by taking corrective action on the sentence at this level."

the appropriateness of the sentence; or, if in fact it has exercised its discretion, it can reaffirm its action without regard to the strictly legal issue.

Proceeding to the effect of the error, we hold that it did not prejudice the accused. As previously noted, the proceeding was a rehearing on the sentence. Originally, the accused was sentenced to a bad-conduct discharge, total forfeitures, reduction in rate, and confinement at hard labor for one year. At the rehearing, the defense based its entire case on the proposition that the accused knew he had made a "pretty bad" mistake for which he was "deeply sorry." The accused pleaded for restoration to duty. He said that marital difficulties, which culminated in a divorce against his wife, had so emotionally disturbed him that for a time he "didn't care whether . . . [he] lived or died." He pleaded with the court for a chance to "make right the mistake . . . [he made by] return[ing him] to duty." He pointed out that he had been "locked up" since he had voluntarily returned to military control. During confinement, he was well-behaved and had been made a trusty. After the original sentence, he spent two months at the Norfolk Retraining Command where he had a "good record." Additionally, three noncommissioned officers on duty at the station brig testified for the accused. In their respective opinions the accused was "squared-away" and was a "model" prisoner. They believed he was "fit" to return to duty and that he would make "a good sailor."

It is apparent that the only real question which faced the court-martial in regard to the sentence was whether the sentence should extend to a bad-conduct discharge. In our opinion, the court-martial determined that question entirely apart from any consideration of the forfeitures. We, therefore, answer the second certified question in the negative. However, we emphasize that we express no opinion on the appropriateness of the sentence.

The second certified question is answered in the negative. The decision of the board of review as to the sentence is reversed. The record of trial is returned to The Judge Advocate General of the Navy for submission to a board of review for reconsideration of the sentence.

FERGUSON, Judge (concurring in the result):

I concur in the result because of United States v Horowitz, 10 USCMA 120, 27 CMR 194. I do not believe this Court can assume what a sentence would be if the court was properly instructed.

LATIMER, Judge (dissenting):

I dissent.

One by one, many of the time-honored and service-accepted limitations set by the President to circumscribe a court-martial's authority to combine different forms of punishment in one sentence have been stricken from military law. In cases such as United States v Holt, 9 USCMA 476, 26 CMR 256, United States v Simpson, 10 USCMA 229, 27 CMR 303, and others, I have set forth my reasons for upholding the President's authority to regulate in the sentence field. My arguments have been uninfluential in convincing my associates that the Manual provisions are a valid exercise of the President's authority as Chief Executive and Commander-in-Chief, and so there is no reason to repeat what has been said. However, I believe a few additional comments on this particular provision are in order.

Some of the restrictions which have been invalidated have been beneficial to an accused, and unfortunately this one particularly falls in that category. No argument in support of that statement is more persuasive than the hypothesis in the Court's opinion that a sentence which imposed total forfeitures and retained the accused in the service might violate the codal proscription against cruel and unusual punishment. If that is a fair possibility, then logic, common sense, and fairness to both the Government and the accused should lead the Court to

conclude it is unwise to remove a barrier to that possible eventuality. Moreover, as suggested by the Court, it is reasonably possible to construe this provision to be a valid restriction, and it is a cardinal rule of statutory construction that when laws dealing with the same subject matter can be reconciled, it is the duty of the court to construe them so as not to conflict.

Some reference is made in the Court's opinion to the fact that this limitation is a policy declaration and as such should not be called to the attention of the court. Winthrop's Military Law and Precedents, 2d ed, 1920 Reprint, page 429, is cited as authority for the proposition that it is against the policy of the services to assess total forfeitures and retain a man in the service. I agree with what Colonel Winthrop has to say and, to present his thinking on this subject, I quote his full comment:

> "Forfeiture as a punishment in general. While forfeiture is the most effective of the minor punishments when judiciously imposed, it may yet be so employed as to be subject to serious objection. Thus depriving an officer or soldier of his *entire* pay, while retaining him in the army, (*i. e.* not dismissing or discharging him in the sentence,)— leaving him nothing for the support of his family, or for the purchase of articles necessary to health, cleanliness, &c.—has been commented upon as in general contrary to public policy and detrimental to the interests of the service, and is now most rarely resorted to."

A footnote to that comment indicates that the principle was enunciated by a general court-martial order issued in 1876, and no doubt it was conceived long prior to that time. Experience gained by the Army justified the policy originally, and certainly since then military history should have taught us that an enlisted man retained in the service without any pay or allowances is a top-flight candidate for the brig. It takes an individual with strong character to avoid the temptations of barracks thievery, unlawful appropriation, absenteeism, and other offenses when he is without funds to support himself or his family. To leave a court-martial unfettered in its imposition of total forfeitures is, in fact, authorizing it to retain an accused on active duty in the armed forces in a state of penal servitude, and that can have unfortunate consequences. But more to the point, a policy can ripen into law or it can be the reason underlying a regulation which has the force and effect of law. No doubt the President, or his advisors, when the Manual for Courts-Martial, United States, 1951, and those which preceded it were promulgated, had this beneficent policy in mind; but that is all the more reason why, if possible, it should be construed to harmonize with the Code.

Article 18 of the Code, 10 USC § 818, provides that the power of a general court-martial to adjudge a sentence is circumscribed by such limitations as the President may prescribe. In that Article, nothing is said about the nature of the restrictions, and they are not limited to any one ingredient of a sentence. The grant of power to the President is broad, and it necessarily includes the authority to bar courts-martial from combining several different forms of punishment. Accordingly, it seems axiomatic to me that if the President can promulgate an executive order which states that total forfeitures of pay and allowances may not be adjudged at all; he can issue a directive that they cannot be imposed unless a punitive discharge is decreed. To assert that such a provision forces a court-martial to separate the accused from the service is unconvincing and certainly cannot be substantiated by careful thinking. Partial forfeitures not to exceed two-thirds of an enlisted man's pay may be assessed without imposing a punitive discharge. Accordingly, the argument that separation is compelled must be founded on a belief that a court-martial which desired to retain an accused in the service was compelled to separate him with a punitive discharge for the sole reason that it desired to impose an additional forfeiture of one-third of his pay. Arithmetically and practically, it could do

that merely by increasing the number of months of forfeitures. The difference between two-thirds and total forfeitures is generally of such an amount that any reasonable court member would not think of assessing a punitive discharge merely to augment the finances of the Treasury by the small additional sum involved. To rationalize otherwise overly accentuates the improbable. Certainly, under any reasonable construction of this provision, it is nothing but a bar erected to assure an accused that if he is retained in the service he will receive some pay and allowances. I am opposed to any interpretation of the Code and the Manual which makes it possible for a court to take that protection away from him.

In the light of the foregoing, I would answer the first certified question in the negative, and that would render unnecessary any answer to the second.