UNITED STATES, Appellant and Cross-Appellee

v

CHARLES V. MILLER, Private E–2, and ROGER L. KLINE,
Private E–1, U. S. Army, Appellees and Cross-Appellants

10 USCMA 296, 27 CMR 370

No. 12,191

Decided March 27, 1959

*Lieutenant Colonel James G. McConaughy* argued the cause for Appellant and Cross-Appellee, United States.  With him on the brief were *Major Thomas J. Nichols* and *First Lieutenant Wade H. Sides, Jr.*

*First Lieutenant Herbert R. Brown* argued the cause for Appellees and Cross-Appellants, Accused.  With him on the brief were *Colonel James Garnett* and *Captain Arnold I. Melnick.*

## Opinion of the Court

GEORGE W. LATIMER, Judge:

### I

Tried in common by a general court-martial, these accused were convicted of two larcenies and one wrongful sale of United States military property, violations of Articles 121 and 108, Uniform Code of Military Justice, 10 USC §§ 921 and 908, respectively.  Each was sentenced to dishonorable discharge, total forfeitures, and confinement at hard labor for three years and, although the convening authority modified the findings as to one larceny, he approved the sentences.  The members of a board of review found the evidence of record insufficient to convince them beyond a reasonable doubt of the accused's guilt of the larcenies.  Consequently, the board disapproved those findings and dismissed the offenses, which it noted would require reconsideration of the sentences.  The board also noted, however, that the court-martial had been furnished with a sentence worksheet containing, inter alia, the instruction struck down by this Court in United States v Varnadore, 9 USCMA 471, 26 CMR 251, and United States v Holt, 9 USCMA 476, 26 CMR 256.  Because of this error, the board concluded it could not legally reassess the sentence, and it ordered a rehearing thereon.  Thereafter, The Judge Advocate General of the Army certified the record to this Court, requesting answers to the following three questions:

"(1) Was the board of review correct in determining that its action in ordering a rehearing on the sentence only was in accord with the intent of Congress in enacting the Uniform Code of Military Justice, Article 66 (d) or was otherwise authorized by law?

"(2) Was the board of review correct in determining that it did not have legal power to reassess and affirm either sentence in excess of six months' confinement and partial forfeitures for a like period?

"(3) Was the board of review correct in holding that each sentence in this case 'was completely invalid when it was adjudged'?"

After the record reached this Court, we granted the accused's petitions for review to determine the legal sufficiency of the evidence to support the outstanding convictions for unlawful disposition.  The facts germane to the resolution of these issues will be recounted in our discussion of each.

### II

We shall deal first with the assigned error, which concerns the sufficiency of the evidence.  Each accused stands convicted of the wrongful sale, in con-

junction with the other and a certain Japanese national female, of a quantity of X-ray film, military property of the United States. It cannot be disputed that the evidence is sufficient to show the girl committed the act, and the sole question confronting us is whether these accused were circumstantially linked to the crime sufficiently to establish their guilt beyond a reasonable doubt.

Stated generally, evidence adduced at trial pertinent to this question disclosed that two or three days before the film disappeared, accused Kline visited the site of the theft under most unusual circumstances. The Japanese woman transported the film to one Aaby—a hospital administrator who bought it from her—in an auto, the use of which had been obtained under an arrangement that the car bailments were to accused Miller, who was known as her spouse or fiancé. The week after the film transaction, Aaby was discussing with the woman and the two accused the purchase price of certain medicines they were seeking to sell to him. During the course of the negotiations, accused Kline stated that Aaby could not obtain the medicines from them so cheaply as he had got the film, "that that had hurt" for that price had been too low. Later, after this conversation, the woman brought the medicines to Aaby to consummate a sale, at which time both were apprehended. A person who Aaby believed to be accused Miller called him on the phone, wanting to know the woman's whereabouts. Aaby located her on the premises and she carried on a telephone conversation. Later, a person Aaby believed to be accused Kline telephoned and asked what had happened. To Aaby's comments about having become embroiled in what apparently were illegal matters for which both would have to answer, the caller said "I think it will clear up."

Each individual scrap of evidence is not to be considered in vacuo. Obviously an alternative and innocent import might possibly attach when any single circumstance is considered by itself, but when the whole of the evidence is taken into account, a different and incriminating pattern emerges. Taking the evidence in the posture of the entire record, then, certainly reasonable men could conclude from the above recited facts that prior to the theft the accused, speaking in the common vernacular, "cased" the premises from which the film was obtained; that they provided the medium through which transportation of the film and delivery to the purchaser was effected; that they asserted a proprietary interest in the proceeds from the disposition of the stolen film; that they were parties with the woman in the sale of other property; that Aaby was an outlet used by them to dispose of property; and that as to this illegal venture they were co-conspirators who actively participated in its perpetration. Accordingly, the evidence is legally sufficient to support the findings of guilt returned by the triers of fact under proper instructions. We therefore reject the assigned error.

### III

Turning to the certified issues, the board of review ordered a rehearing limited to the sentence only. The first question inquires whether a board of review has legal authority to order that form of relief. The doubt arises from the Supreme Court's opinion in Jackson v Taylor, 353 US 569, 579, 77 S Ct 1027, 1 L ed 2d 1045, where, in holding that a rehearing on sentence at the trial level was not mandatory, the Court stated:

"Finally the petitioner suggests that the case should be remanded for a rehearing before the court-martial on the question of the sentence. We find no authority in the Uniform Code for such a procedure and the petitioner points to none. The reason is, of course, that the Congress intended that the board of review should exercise this power. This is true because the nature of a court-martial proceeding makes it impractical and unfeasible to remand for the purpose of sentencing alone."

Article 66(d), Uniform Code of Mili-

tary Justice, 10 USC § 866, provides in pertinent part:

"If the board of review sets aside the findings and sentence, it may, . . . order a rehearing."

It has long been the law that findings and sentence are completely separate and distinct portions ▮▮▮▮▮ ▮ of military justice procedure. United States v Walker, 7 USCMA 669, 23 CMR 133, and cases cited therein. See also United States v Morphis, 7 USCMA 748, 23 CMR 212. This being so, there is no legitimate reason why a valid conviction must be overturned and a rehearing on findings ordered, merely to purge an error that infests only the sentence and requires a rehearing thereon. Certainly, it is not necessary to impute that unlikely intent to the Congress. Furthermore, as appellate defense counsel cogently point out, the provisions of the Code do not deny the authority to order rehearings limited to sentence only, and, in fact, a construction granting that power is dictated by rudimentary logic, for the express authority to grant the more extensive relief—a complete rehearing—impliedly authorizes a grant of a separate and divisible part thereof—a rehearing on sentence only. Moreover, as the board of review pointed out in its well-reasoned opinion, the literal but entirely unreasonable construction of Article 66(d), supra, can easily be avoided merely by substituting "or" for "and," construing that statute to provide, "If the board of review sets aside the findings *or* sentence, it may . . . order a rehearing." (Emphasis supplied.)

This Court has, for some time, so interpreted that codal provision and its companion statute, Article 67(e), Uniform Code of Military Justice, 10 USC § 867, for in disposition of many cases we have indicated that a rehearing limited to sentence alone may be an appropriate and permissive remedy for the cure of errors not affecting findings. See, e. g., United States v McBride, 6 USCMA 430, 20 CMR 146; United States v Johnson, 7 USCMA 488, 22 CMR 278; United States v Oakley, 7 USCMA 733, 23 CMR 197; United States v Rinehart, 8 USCMA 402, 24 CMR 212; United States v Hirrlinger, 8 USCMA 716, 25 CMR 220; United States v Varnadore, supra; United States v Faylor, 9 USCMA 547, 26 CMR 327. We note parenthetically that in touching on this question the Supreme Court purported to rely on the holdings of this Court. While it is true we have generally returned cases to boards of review because sending them to the trial level is rather cumbersome in that a new court must be assembled and informed on the facts, there are some cases in which the latter disposition is preferable and, as indicated, our decisions approving this limited form of relief are found in the reported cases. Accordingly, we are led to believe that in Jackson v Taylor, supra, the Supreme Court was merely pointing out some of the difficulties which prompted Congress to authorize reassessment of the sentence by a board of review and that it was not intending to say the power to order the limited rehearing was not impliedly granted by Articles 66 and 67 of the Code. Accordingly, we reaffirm our previous holdings that a case may be returned to a court-martial for rehearing on sentence only. The first certified question is, therefore, answered in the affirmative.

IV

As the board of review noted, the court-martial was furnished, for use in its deliberations on punishment, a sentence work sheet. Certain footnotes thereto provided:

"3. A single sentence adjudged against an enlisted person of an armed force of the United States which does not include dishonorable or bad conduct discharge shall not include confinement at hard labor for a period greater than six months.

•    •    •    •    •

"5. 'To forfeit all pay and allowances' may not be adjudged unless a punitive discharge (DD, BCD or dismissal) is also adjudged."

**299**

Having found prejudicial error on this base, the board of review concluded that our holdings restricted its choice of methods in correcting the same. The board, therefore, ordered a rehearing on sentence.

The remaining two issues referred to us by the office of The Judge Advocate General of the Army seek to test the propriety of that conclusion. They need not long detain us. Under the decisions of this Court in United States v Varnadore, supra, and United States v Jobe, 10 USCMA 276, 27 CMR 350, there can be no question but that the written instructions were erroneous. This is not to say, however, that such errors are necessarily prejudicial, much less that their possible use denies the accused due process of law which ipso facto voids the sentence, for our decisions are to the contrary. United States v Horowitz, 10 USCMA 120, 27 CMR 194; United States v Genella, 10 USCMA 168, 27 CMR 242; United States v Villa, 10 USCMA 226, 27 CMR 300; United States v Genuario, 10 USCMA 260, 27 CMR 334; United States v Jobe, supra. Clearly, then, the board of review erred in stating that the sentences were completely invalid when adjudged. In light of the above-cited cases, it is likewise obvious that the board was in error when it held it had but limited power to reassess the sentence, for it was free to measure the possibility of harm to the accused and purge the effect of any error by reassessing an appropriate sentence. Cf. United States v Wells, 9 USCMA 509, 26 CMR 289. The second and third certified issues are, therefore, answered in the negative.

The board of review indicated in its opinion that, but for its conclusions as to the law, it was quite willing to obviate further unnecessary proceedings by reassessing the sentences of these accused upon the basis of the single conviction it affirmed. Accordingly, the decision of the board as to sentence is reversed and the record is remanded to The Judge Advocate General of the Army for reference to the board of review for further action not inconsistent with this opinion.

Chief Judge QUINN concurs.

FERGUSON, Judge (concurring in part and dissenting in part):

I concur in the treatment of the first certified issue and am bound by this Court's decision in United States v Horowitz, 10 USCMA 120, 27 CMR 194, as to the second and third certified issues. However, I dissent from the majority's finding that the evidence is legally sufficient. My review of the record convinces me there is nothing more in this case than a series of innocent circumstances which, taken in the aggregate and in the light of the evidence of record, give rise to suspicion. They do not constitute circumstantial evidence from which an inference of guilt of the offense charged may be drawn by the court-martial.

Although there is sufficient evidence for a court-martial to find that the Japanese girl (Toku Rei Rin) sold fifteen boxes of X-ray film to Mr. Aaby, Administrator of the Tokyo Sanitarium Hospital, on September 13, 1957, there is not present in the record sufficient evidence as a matter of law to sustain a finding that either of these accused was guilty of that offense.

The majority recites what the evidence "state[s] generally." I prefer, and I believe it essential here, that we get down to specifics. The opinion states "that two or three days before the film disappeared, accused Kline visited the site of the theft under most unusual circumstances." Those "most unusual circumstances" were that Kline and another soldier (not Miller) on Sunday morning, September 8, 1957, went to visit Private First Class Comouche at Exposure Room 2 in the Camp Zama Hospital X-Ray Department. No film was stored in that room but some was kept in the adjoining dark room. There was no showing Kline ever went to the dark room nor is there any reference to a discussion of X-ray film. Kline and his friend had met Private First Class Comouche at a basketball tournament about six months earlier

300

in Osaka, and this was the first time Comouche had seen them since that time. At the very most, mere suspicion is present here in the light of subsequent developments. But it is nothing more than mere suspicion and I have no doubt similar visits occur in the military with some frequency.

The opinion continues: "The Japanese woman transported the film to one Aaby—a hospital administrator who bought it from her—in an auto, the use of which had been obtained under an arrangement that the car bailments were to accused Miller, who was known as her spouse or fiancé." The bailment situation involved deserves some clarification. Mr. Hirokichi Goto testified that he operated a private driving club. The Japanese girl here involved was a member of that club although she had no license to drive. When she became a member of the club, Mr. Goto testified, he understood the car was to be loaned to Miller, who had a license. Mr. Goto's records showed a blue Austin as having been rented to the girl from September 12th to 13th. Mr. Goto did not know who picked up the car. If Miller was the husband or fiancé of the girl, or even a close friend, there is nothing so unusual in the recited arrangement. More important, there is absolutely no evidence that the accused, Kline, had anything to do with the arrangement, nor is there any evidence Miller ever rented a car from the club. In fact, Miller was not a member of the club and Mr. Goto testified the club rented cars only to members.

Mr. Aaby, the Administrator of Tokyo Sanitarium Hospital, whom the majority sees as an "outlet" used by the accused to dispose of property, can just as fairly from the evidence be considered to have believed the property he purchased was surplus property. There is no indication he knew any of the property was stolen. Nor is it absolutely clear from the evidence any property was stolen. It is possible the X-ray film may have been mislaid or transferred from another part of the hospital, there being testimony that supplies were constantly shuffled around. Even if it could be found from the evidence that 20 boxes of film were stolen from Camp Zama and that 15 of those were the ones sold by the girl to Aaby, and the evidence on these points leaves much to be desired, there is absolutely no showing of any opportunity available to either accused to have taken the film nor any evidence either accused ever had any of the film in his possession.

When the two accused, together with the girl, were present in Mr. Aaby's office about a week after the X-ray sale discussing the prospective sale of some medicine, someone, believed by Mr. Aaby to be Kline, said something about a price which "hurt" which from the record is not too clear. At one point Mr. Aaby testified he made a list of the medicines he could purchase and put the prices on the list and that "they suggested that 'it hurt', that the prices that I was trying to get them for 'hurt.'" He then gave other testimony that someone said in effect that the price of the X-ray film "hurt." It should be noted here the law officer instructed the court-martial there was nothing before them to show other than that the medicine was properly obtained from some legal source. Any statement as to the price of the medicine "hurting" is, therefore, so far as the facts of record show, perfectly innocent— and of course it has nothing to do with the X-ray film. If Kline said something to the effect that the price received for the X-ray film "hurt," which as indicated earlier is not clear, that could show knowledge of the sale of the X-ray film but is far from disclosing complicity therein. Apparently the majority are adopting a theory that: (1) the court-martial could have believed one of the accused said the price received for the X-ray film "hurt"; (2) this did more than impute knowledge to him and showed his involvement in the wrongful sale of the X-ray film because he must have meant the price hurt *him*; (3) the other accused, by remaining silent, was thereby encompassed within the scope of the remark and adopted it as his own (or, in the alternative, perhaps they find Miller's connection via the auto rental in-

cident). This is simply piling inference upon inference.

Finally, the subsequent telephone conversation between Aaby and the accused was not shown as having dealt with the X-ray film.

I consider the record devoid of sufficient proof for a court-martial to find these accused guilty beyond a reasonable doubt. I would, therefore dismiss the specification and the Charge.