UNITED STATES, Appellee

v

CHARLES L. BROWN, Seaman, U. S. Naval Reserve, Appellant

12 USCMA 368, 30 CMR 368

No. 14,651

Decided April 28, 1961

*Captain John P. Gibbons* argued the cause for Appellant, Accused.

*Commander Benjamin H. Berry* argued the cause for Appellee, United States. With him on the brief was *Commander Louis L. Milano.*

Opinion

GEORGE W. LATIMER, Judge:

As this case reaches us the accused stands convicted on his plea of guilty to communicating a defamatory statement, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. His trial was held before a special court-martial and he was sentenced to a bad-conduct discharge which has been affirmed by a board of review. We granted review to consider two assignments of error which question the sufficiency of the specification to state an offense and the legality of the punitive discharge. They will be discussed in the order stated.

I

The essential parts of the specification were couched in the following language:

"In that Charles L. Brown, seaman, U. S. Naval Reserve, U. S. Naval Air Station, Pensacola, Florida, on active duty, did, on board U. S. Naval Air Station, Pensacola, Florida, on or about 18 May 1960, wrongfully, willfully, maliciously, and without justifiable cause, communicate to Hen-

dricks C. Alford, Jr., and Marvin W. Smoot, Special Agents of the Office of Naval Intelligence, a defamatory statement in writing concerning Lieutenant . . . , U. S. Navy, in words as follows: . . ."

Thereafter follows the written statement executed by the accused which charges a member of the Naval service with committing revolting acts of sodomy with the accused as a participant.

A reference to a few general rules governing the allegations necessary to state an offense will suffice to establish that the specification is invulnerable to attack for the first time on appeal. The following statement of the law taken from United States v Sell, 3 USCMA 202, 206, 11 CMR 202, is particularly apropos:

". . . The rigor of old common-law rules of criminal pleading has yielded, in modern practice, to the general principle that formal defects, not prejudicial, will be disregarded. The true test of the sufficiency of an indictment is not whether it could have been made more definite and cer-

369

tain, but whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet; and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction. Furthermore, when the pleadings have not been attacked prior to findings and sentence, it is enough to withstand a broadside charge that they do not state an offense, if the necessary facts appear in any form or by fair construction can be found within the terms of the specification."

Here the specification was first assailed on appeal as being deficient in that it failed to allege the ▇▇▇▇▇ ▇ falsity of the statement. Therefore, we can dispose of this issue by determining the merits of that single contention. We start our discussion by assuming, without deciding, that falsity is an essential element which must be pleaded. We make that explanatory statement in view of the converse suggestion that, rather, truth is an affirmative defense to criminal libel. See, generally, 33 Am Jur, Libel and Slander, §§ 309 and 320. However, a resolution of that question becomes immaterial in view of our holding.

In interpreting the words used in the specification, we give unto them their ordinary and recognized meaning. But, in addition, we look to its four corners to determine whether the pleading in its entirety either expressly or by necessary implication alleges that the statement executed by the accused was false. The utterance which is alleged *in haec verba* is of such a nature that the accused had to know whether it was true or false. There could be no uncertainty for, either he and the victim performed the acts or they did not, and, parenthetically, as will be seen from our following discussion, we note that by his plea of guilty accused established with certainty the asserted offenses did not occur.

In regard to the particular terms from which we glean an allegation of falsity,

it may be noted from the wording of the quoted part of the specification that the accused is alleged to have wrongfully, willfully, maliciously and without justifiable cause communicated a defamatory statement. That latter phrase—communicate a defamatory statement—includes the publication of a calumnious remark which is a false accusation. But, in addition, the accused is alleged to have communicated his criminal charges without justifiable cause. In the military community, if his statement was unjustifiable then it had to be false, for every person in the service is expected to report the commission of a serious offense which affects the command and, unless the communication was false, it would not only be justifiable but necessary to protect the good order of the service. Moreover, the accused is charged with wrongfully making the statement, and if it was in fact true it was rightful, not wrongful, to pass the information on to special agents of the Office of Naval Intelligence who have crime detection duties. While we are aware that under certain circumstances words of criminality may add little to a specification, in this setting it could only be malicious —which is defined as characterized by wicked motives—to disclose to the aforementioned officials the facts concerning the commission of these alleged offenses if they were untrue. The other words of criminality are strings to the bow which we might use, but we deem further discussion would be merely cumulative.

Accordingly, we conclude our treatment of this issue by stating categorically that a fair reading of this specification establishes without question that it alleges in express words or by necessary implication the statement executed by the accused was false.

II

The second issue raises a question as to the imposable maximum sentence for the offense alleged and judicially confessed. The president of the special court-martial instructed the court members that in assessing punishment they were limited to bad-conduct discharge, confinement at hard labor for a term not

to exceed six months, forfeiture of two-thirds' pay for that same period, and reduction to the lowest enlisted pay grade. This advice was based on the jurisdictional limits of the special court.

Appellate defense counsel asserts the president was in error. He presses on us the argument that the accused pleaded guilty to a specification which, in law, alleged a violation of Article 107 of the Uniform Code of Military Justice, 10 USC § 907, or an offense closely related thereto, and the penalty set forth in the Table of Maximum Punishments for that criminal act applies. He further argues the column in the Table opposite that offense does not permit the imposition of a bad-conduct discharge for a man of accused's rank, and therefore his present sentence to punitive separation is illegal.

The argument is ingenious but overlooks several significant and controlling principles. First, if we accept the first part of the argument and assume that Article 107 is controlling, then we must of necessity reject the second prong of the contention. In support of our position, we call attention to the fact that this specification alleges a written defamatory statement by the accused, and the record shows it was executed under oath. The Table of Maximum Punishments has two general subdivisions for Article 107 and the line of departure is between signing written false official documents and otherwise making false official statements. Therefore, assuming this to be a false official statement, the offense would be governed by the first category listed, and a dishonorable discharge may be imposed for that type of offense.

Passing on to the more important aspect of the sentence issue, we are of the opinion that the maximum sentence imposable in this case is fixed by the Code of the District of Columbia and it provides for a fine of $1,000.00 or five years' confinement or both. See District of Columbia Code, Title 22, §§ 22–2301 (1951 ed). The principle for determining the applicable maximum punishment is found in paragraph 127c of the Manual for Courts-Martial, United States, 1951, and it provides:

"Offenses not listed in the table, and not included within an offense listed, or not closely related to either, remain punishable as authorized by the United States Code (see, generally, Title 18) or the Code of the District of Columbia, whichever prescribed punishment is the lesser, or as authorized by the custom of the service. With respect to other matters which properly may be considered in fixing punishment, see 76a, 123, and 154a."

See United States v Cramer, 8 USCMA 221, 24 CMR 31; United States v Picotte, 12 USCMA 196, 30 CMR 196.

The United States Code does not proscribe this offense but, as previously mentioned, the District of Columbia Code does. The resolution of the issue, therefore, narrows to a determination of whether the offense is listed in the Table of Maximum Punishments or, in the alternative, whether it is closely related to one that is listed. The offense is alleged as a violation of Article 134 of the Uniform Code and for identification purposes we refer to it as criminal libel. It is an offense which seeks to destroy the character and ruin the military standing of the victim of the statement, in this case a member of the Naval service. It is a crime which is particularly destructive of good order and discipline in the armed services, and it is one that is quite often used as a means of harassment to those who are seeking to carry out the military duties imposed on them. The offense has long been known in and recognized by both military and civilian law, and it has essential elements which distinguish it from the other offenses listed in the Table of Maximum Punishments, and particularly false official statements. By way of illustration, the very essence of criminal libel is the defamation of an individual so as to deprive him of the benefits of public confidence. Official statements seldom touch base in that field. Cf. United States v Fuller, 9 USCMA 143, 25 CMR 405, where we distinguished burning with intent to

defraud from arson. To argue that character assassination is closely related to a false statement is as inconsistent as asserting that murder is closely related to fraud against the Government. It is indeed a weak argument to assert that a crime which Congress has believed serious enough to authorize the imposition of five years' confinement in civilian courts is so minor in the military community that three months' incarceration is appropriate for the most aggravated type of offense. We cannot subscribe to that theory for, when we consider the norm which must be protected in the military service, we must of necessity conclude there is no offense listed in the Table of Maximum Punishments which has any resemblance to the one here committed.

The same reasoning can be employed to overrule the contention that this is a mere disorder. Every offense may be considered as some form of disorder, but the sentences for felonies are not reduced to that level merely because the more serious offense can be said to interfere with discipline or bring the service into disrepute. Accordingly, we find the president's instruction limiting imposable punishment to the jurisdictional ceiling for special courts-martial was correct.

The decision of the board of review is affirmed.

Chief Judge QUINN concurs in the result.

FERGUSON, Judge (concurring in the result):

I concur in the result.

I agree with Judge Latimer that the specification in question is sufficient to allege an offense under the Uniform Code of Military Justice, Article 134, 10 USC § 934. We inferentially approved an identical charge in United States v Grosso, 7 USCMA 566, 23 CMR 30. There, the accused was charged with " 'wrongfully, wilfully, maliciously, and without justifiable cause, writing and forwarding through the U. S. Mails to the San Francisco Field Office of the Federal Bureau of Investigation, a defamatory statement' concerning a Navy

**372**

lieutenant." United States v Grosso, supra, at page 569. The statement itself was recited in the specification. Here, the identical procedure was followed. While it is true that, in the Grosso case, it was also alleged that the accused's conduct violated a particular California statute, such is not a governing consideration. The question of sufficiency is determined by an inquiry whether the specification sets forth a violation of Code, supra, Article 134, and not whether it avers conduct prohibited by a state code section. As I noted in my separate opinion in United States v Leach, 7 USCMA 388, 22 CMR 178, at page 404:

". . . At no place in the Code is it stated that the violation of a state statute is per se a violation of Article 134, supra. In military law the violation of a state statute may or may not be violative of the Code depending upon whether the acts alleged in violation of the state law are the type which the court could find were 'disorders and neglects to the prejudice of good order and discipline in the armed forces, or conduct of a nature to bring discredit upon the armed forces.' "

I am, however, unable to join in the view that the accused's sentence is governed by the District of Columbia Code. We have heretofore pointed out that resort may not be had to that enactment for purposes of determining punishment, if an offense closely related to that charged is specifically listed in the Table of Maximum Punishments, paragraph 127c, Manual for Courts-Martial, United States, 1951. United States v Long, 2 USCMA 60, 6 CMR 60; United States v Blevens, 5 USCMA 480, 18 CMR 104; United States v Mardis, 6 USCMA 624, 20 CMR 340. Indeed, the Manual, supra, expressly so provides, at page 214:

"Offenses not listed in the table, and not included within an offense listed, or not closely related to either, remain punishable as authorized by the United States Code (see, generally, Title 18) or the Code of the District of Columbia, whichever prescribed punishment is the lesser, or

as authorized by the custom of the service." [Emphasis supplied.]

This accused was found guilty of wrongfully, willfully, maliciously, and without justifiable cause, communicating to named special agents of the Naval Intelligence a defamatory statement in writing concerning a naval officer in which that officer was accused of committing various acts of sodomy with the accused. While it is not so averred, it appears that the defamatory statement was given to the agents during their conduct of an official investigation into the officer's activities.

Code, supra, Article 107, 10 USC § 907, *inter alia,* punishes the making of any false official statement or the signing of any false record, return, regulation, order, or other official document. Accused's statement was made to official investigators, was in writing, and was apparently false. Accordingly, it appears to be most closely related to the offense of signing a false official document; and the punishment for that offense, rather than the penalty for criminal libel established by the District of Columbia Code, should govern. Manual, supra, paragraph 127c. As stated by the Table of Maximum Punishments, supra, such consists of dishonorable discharge, forfeiture of all pay and allowances, and confinement at hard labor for one year.

It follows, therefore, that I am able to agree with the ultimate conclusion that the decision of the board of review in this case must be affirmed, for the president of the special court-martial properly limited accused's possible punishment to bad-conduct discharge, partial forfeitures, and confinement at hard labor for six months. I nonetheless record my differing views concerning the principal opinion's rationale, for its use of the District of Columbia Code would permit the imposition of five years' confinement, a very material distinction in the event accused had been tried by general court-martial. Moreover, it is doubtful that resort to the District of Columbia or United States Codes would permit imposition of a punitive discharge. See United States v Varnadore, 9 USCMA 471, 26 CMR 251, and United States v Holt, 9 USCMA 476, 26 CMR 256.