UNITED STATES, Appellee,

v.

James A. MEANS, First Lieutenant, U.S. Air Force, Appellant.

Dkt. No. 38154/AF.
CMR No. 22494/S.

U. S. Court of Military Appeals.

Jan. 12, 1981.

For Appellant: *Captain Willard K. Lockwood* (argued); *Colonel Larry G. Stephens, Captain Robert P. Hailey* (on brief).

For Appellee: *Captain Michael J. Hoover* (argued); *Colonel James P. Porter, Captain James R. Van Orsdol*, and *Captain William O. Ashcraft*, a law student who assisted in preparation of the brief (on brief).

*Opinion of the Court*

EVERETT, Chief Judge:

A general court–martial convened in Germany convicted the appellant of wrongful possession of .02 grams of amphetamines and of 10.08 grams of marihuana, in violation of Articles 92 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892 and 934, respectively. Thereafter, the appellant was sentenced to be dismissed from the service and to forfeit $250.00 pay per month for 2 months. The convening authority approved, and the United States Air Force Court of Military Review affirmed, the trial results.

In this Court, the appellant challenges whether the convening authority properly exercised his discretion in referring the charges for trial by general court–martial. (8 M.J. 219). Means claims undue weight was given to his status as an officer in the decision that his case be tried by general

court–martial and that similar charges against an enlisted man would have been tried by special court–martial.[1] Furthermore, appellant now complains that by prohibiting special courts–martial from sentencing officers to confinement, paragraph 126*d* of the Manual for Courts–Martial, United States, 1969 (Revised edition), unduly restricts the punishments available to a special court–martial in officer cases. Thus, it improperly compels convening authorities–as in the case at bar–to refer for trial by general court–martial cases which might otherwise be disposed of by a special court–martial. We reject these claims.

## I

On April 15, 1978, the appellant's vehicle was searched by a German customs official at an autobahn border crossing between the Netherlands and Germany near Emmerich, Germany. During the course of the customs search, the official found a pipe, 10.08 grams of marihuana in the hashish form, and approximately .02 grams of amphetamines. By the time of his trial, appellant had completed a decade of service in the Air Force–4½ years as an enlisted man and 5½ years as an officer. He had no prior court–martial convictions, nor had he ever received nonjudicial punishment under Article 15, UCMJ, 10 U.S.C. § 815.

Prior to the entry of pleas, trial defense counsel moved unsuccessfully to dismiss the charges and specifications on the ground that Means had been denied equal protection of the law. Specifically, he charged that the appellant's case had been referred to a general court–martial primarily because of his officer status–that if the appel-

lant had been an enlisted man, the overwhelming statistical odds were that these charges would have been disposed of under the provisions of Article 15 or, at worst, by a special court–martial.

The genesis of the appellant's motion is found in the recommendation section of the staff judge advocate's pretrial advice to the general court–martial convening authority. There it was pointed out that the Article 32 investigating officer had recommended trial by special court–martial, but that the appellant's unit commander and the special court–martial convening authority both had recommended trial by general court–martial. Then it concluded that "in view of Means' status as a [sic] officer and the serious nature of the charges and specifications, I recommend that all charges and specifications set out above be referred to trial by general court–martial." The convening authority concurred in the recommendation.

To support this claim derived from the pretrial advice, defense counsel called as a witness the author of that advice, Captain Fiscus.[2] When asked what role the appellant's officer status had played in the advice's recommendation, Fiscus indicated that he had considered "the fact that officer status incurs certain benefits and obligations to a person, that it is an office of the United States and one to which certain responsibilities are owed above and beyond perhaps what normal, everyday citizens of the government owe." However, he responded in the negative when asked if he believed that an officer had a higher duty than an enlisted man to obey the law or that an officer should incur a higher penal-

1. Trial defense counsel also apparently claimed that appellant had been discriminated against because of the command to which he belonged and that in another command the charges would not have been tried by general court–martial. Appellate defense counsel forthrightly conceded that this argument is not supported on the facts of the case at bar. In any event, different disciplinary policies among different military commands would seem quite permissible. The Supreme Court has noted that equal protection relates to equality between persons as such, rather than between areas; and terri-

torial uniformity is not a constitutional requirement. *McGowan v. Maryland*, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). Differences in disciplinary policies among different commands would appear authorized by this principle.

2. While Captain Fiscus actually wrote the pretrial advice in the appellant's case, it was signed by the staff judge advocate for the United States Air Forces in Europe (USAFE), of which the commanding general was the convening authority here.

ty than his enlisted counterpart if he violates the law. According to the applicable statistics, it appeared to Fiscus that had these charges been preferred against an enlisted man, they probably would have been disposed of either by Article 15 or by special court–martial. However, he stated that, under precisely the same facts as those surrounding appellant's case, "I would have recommended a general court–martial." These facts included the forwarding recommendations from the unit commander and special convening authority and the increased emphasis in that command on combating drug use and possession.

On appeal to this Court, the appellant has attempted to bolster his trial claim by submitting for our consideration statistics on the dispositions that have been made Air–Force–wide of what he terms "minor drug possessions,"[3] as well as statistics on the frequency of court–martial for officers who have been involved in drug offenses.[4] However, from these statistics we are unable to infer that in appellant's case–or in the others for which statistics have been provided by appellate defense counsel–status as an officer or as an enlisted man was decisive as to choice of the forum in which prosecution would proceed.

Certainly in the case at hand, appellant's status as an officer does not appear to have governed the reference of the case to a general court–martial. The recommendation by the staff judge advocate read (emphasis supplied):

> In accordance with the foregoing discussion, and in view of Means' status as a [sic] officer and the serious nature of the charges and specifications, I recommend that all charges and specifications as set out above be referred to trial by general court–martial.

The "foregoing discussion" to which reference is made included recommendations by appellant's unit commander and by the special court–martial convening authority that the charges be referred for trial by general court–martial. Also, the "discussion" had quoted these comments made by the unit commander in forwarding the charges (emphasis supplied):

> Based on information provided to me by Lt Means' former commander he possessed a positive attitude and was striving to constantly better himself in July 1977. Based on this potential he was awarded a "2" on his OER. Following the OER it gradually became apparent that although Lt Means possessed the job knowledge to perform various taskings, *the jobs were not getting done.* He was consequently moved into the maintenance supervisor's officer [sic] for closer supervision with the thought in mind of arresting and subsequently improving his *declining performance.* From August 1977 thru January 1978 he was counseled three times for financial irresponsibility. He was given a Letter of Reprimand in January 1978 for financial irresponsibility. *He continued to be fiscally irresponsible up to the time of his apprehension* for possession of drugs. *Since March 1978 his performance has rapidly declined. His rehabilitation potential is considered to be nil.*

Finally, the discussions in the pretrial advice, besides reflecting the serious nature of the charges against appellant, had also set out in some detail the service–discrediting circumstances surrounding the discovery of the offenses–namely, that Means, an Air Force officer, had been stopped by a foreign national at an international border crossing and found to be in possession of contraband drugs.

In short, the record of trial and allied papers do not support appellant's claim that his officer status was chiefly responsible for

---

**3.** The maximum punishment for these offenses is a dismissal or dishonorable discharge, confinement at hard labor for 5 years, total forfeitures and, for enlisted men, reduction to E–1.

**4.** These statistical analyses were extracted from the data base of the Automated Military Justice Analysis and Management System (AMJAMS) of the Department of the Air Force. AMJAMS is a computerized data system designed to collect and correlate data pertaining to courts–martial and nonjudicial punishment actions within the Air Force.

his case being referred to a general court–martial. Instead, it was only one of several factors considered by the convening authority.

## II

■ Even if appellant's officer status had been a principal factor–indeed, the decisive factor–in the convening authority's decision to refer the case to a general court–martial, appellant would still have no valid constitutional grievance. For the Government to make distinctions does not violate equal protection guarantees unless constitutionally suspect classifications like race, religion, or national origin are utilized or unless there is an encroachment on fundamental constitutional rights like freedom of speech or of peaceful assembly. The only requirement is that reasonable grounds exist for the classification used. *Cf. Oyler v. Boles*, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962); *United States v. Batchelder*, 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979).

■ We find nothing arbitrary about a commander's determination to take officer status into account in referring cases for trial by court–martial. Such an exercise of prosecutorial discretion is quite in line with the consistent recognition that commissioned officers in the Armed Services occupy a special position of trust and duty.

Only a few years ago the Supreme Court of the United States observed:

> We have also recognized that a military officer holds a particular position of responsibility and command in the Armed Forces:
>
> > "The President's commission ... recites that 'reposing special trust and confidence in the patriotism, valor, fidelity and abilities' of the appointee he is named to the specified rank during the pleasure of the President." *Orloff v. Willoughby, supra*, [345 U.S.] at 91 [73 S.Ct. at 539], 97 L.Ed. 842.

*Parker v. Levy*, 417 U.S. 733, 744, 94 S.Ct. 2547, 2556, 41 L.Ed.2d 439 (1974). Consistent with this pronouncement, the Court in *Parker v. Levy, supra*, rebuffed an attack on the constitutionality of Article 133, UCMJ, 10 U.S.C. § 933, which imposes special penalties for "conduct unbecoming an officer and a gentleman." The Supreme Court has also established "that the commissioning of officers ... is a matter of discretion within the province of the President as Commander in Chief." *Orloff v. Willoughby*, 345 U.S. 83, 90, 73 S.Ct. 534, 538, 97 L.Ed. 842 (1953). Thus, there is great judicial reluctance to compel the President to appoint a person to such "a post of honor and trust." *Id.* at 91, 73 S.Ct. at 539.

Similarly, Congress has implicitly acknowledged the unique position of commissioned officers. While Article 133 may be the best example, there are others in the Uniform Code. Thus, Article 4 grants a commissioned officer who has been dismissed the right to trial by general court–martial; Article 15 contains special provisions applicable to nonjudicial punishment of officers; Article 19 precludes special courts–martial from sentencing officers to dismissal; Article 20 excludes officers from the jurisdiction of summary courts–martial; Article 25 makes "[a]ny commissioned officer on active duty ... eligible to serve on all courts–martial"; Article 26(b) provides that "[a] military judge shall be a commissioned officer"; Article 71(b) requires Secretarial approval for the dismissal of an officer; under Articles 89 and 90 disrespect towards a superior commissioned officer or willful disobedience of his orders is subject to severe punishment; and Article 135 requires courts of inquiry to consist of "three or more commissioned officers."

Furthermore, the President has recognized the unique position of officers for purposes of military justice. No court–martial may reduce an officer in grade; only a general court–martial may sentence a commissioned officer to confinement; and no court–martial may sentence him to hard labor without confinement. Para. 126*d*, Manual, *supra*. Moreover, there are limitations on ordering an officer into arrest or confinement. Para. 21*a* (1), Manual, *supra*.

In short, the Armed Services comprise a hierarchical society, which is based on military rank. Within that society commissioned officers have for many purposes been set apart from other groups. Since officers have special privileges and hold special positions of honor, it is not unreasonable that they be held to a high standard of accountability. There is nothing amiss when a commander decides that an officer's case should be referred for trial by a general court–martial, which is not subject to jurisdictional limits on the punishment it can impose.

Ironically, if appellant's case had been referred to a special court–martial, as appellate defense counsel claim should have been done, the enlisted persons in his command might have complained of discrimination. A special court–martial may not sentence an officer to confinement or to a dismissal. However, an enlisted person tried by special court–martial for the same offenses of which Means was convicted could have been sentenced to confinement and a punitive discharge. Because of the limitations on the sentencing authority of special courts–martial in an officer case, referring such cases to a special court–martial for trial would create a substantial possibility that the officer would receive a lesser sentence than an enlisted man also tried by special court–martial for identical offenses.

## III

■ Appellant also contends that the sentencing restrictions which the President has imposed on special courts–martial in officer cases constitute an unwarranted restriction on the authority of commanding officers. Under Article 19 of the Code a special court–martial is free to sentence an officer to confinement.[5] Thus, if a commander believed that an offense committed by an officer in his command merited confinement but not dismissal, he would be free to refer the case to a special court–martial in the hope of achieving the desired result.[6] However, since the President has prohibited the imposition by special court–martial of a sentence which includes confinement in an officer case, the commander must refer the case to a general court–martial if the accused officer is to receive a sentence to confinement. When this takes place, the officer also is subject to a sentence to dismissal, which would not have been imposable by a special court–martial. In short, appellant contends that the provisions of paragraph 126d of the Manual compel a commander to refer an officer case to a general court–martial when otherwise he might utilize a special court–martial.

The persuasiveness of this argument is diminished somewhat by the very statistics to which appellate defense counsel have called our attention. They reveal that, even if the Manual restrictions on the sentencing powers of special courts–martial exert some pressure on commanders to utilize general courts–martial in trials of officers, some officer cases are, nonetheless, tried by special court–martial. Furthermore, it seems perfectly clear that, in the case at hand, the commander wished to refer the charges to a tribunal which could terminate appellant's military service. Under the limitations imposed on special courts–martial by Article 19 of the Uniform Code–not by any provision of the Manual–a special court–martial may not sentence an officer to dismissal. Therefore, from the stand-

5. Article 19, Uniform Code of Military Justice, 10 U.S.C. § 819, in addressing permissible punishments which a special court–martial may adjudge, simply provides in pertinent part:

Special courts–martial may, under such limitations as the President may prescribe, adjudge any punishment not forbidden by this chapter except death, dishonorable discharge, dismissal, confinement for more than six months, hard labor without confinement for more than three months, forfeiture of pay

exceeding two–thirds pay per month, or forfeiture of pay for more than six months. As is apparent, Congress did not proscribe a special court–martial from confining an officer, as it did dismissing him.

6. Paragraph 33h, Manual for Courts–Martial, United States, 1969 (Revised edition), states that "charges against an accused, if tried at all, ordinarily should be tried at a single trial by the lowest court that has the power to adjudge an appropriate and adequate punishment."

point of appellant's commander, trial by special court–martial was never a viable option; only a general court–martial would have possessed power to impose the punishment which the commander deemed appropriate.

The appellant relies on *United States v. Varnadore*, 9 U.S.C.M.A. 471, 26 C.M.R. 251 (1958), wherein this Court invalidated a provision of the Manual for Courts–Martial, United States, 1951, that a sentence which did not include a punitive discharge could not include confinement for more than 6 months. In one sense, this limitation imposed a ceiling on punishment in that, if a court–martial were unwilling to adjudge a punitive discharge, if could not impose confinement for more than 6 months. However, at the same time this Manual provision might operate to an accused's prejudice, because court members who believed that the offenses committed merited lengthy confinement might be induced to adjudge the punitive discharge so that adequate confinement could be adjudged.

Appellant's reliance on *Varnadore* is misplaced. Unlike the corresponding provision in the 1951 Manual for Courts–Martial, paragraph 126*d* of the current Manual does not require dismissal of an officer if he is to be confined.[7] Thus, the present Manual does not impose a limitation on a court–martial's discretion to impose confinement without dismissal, or vice versa. The general court–martial which tried appellant sentenced him to dismissal but did not adjudge confinement. It was free to do the

converse–although such a sentence would have been unusual in light of Service customs.

Since the 1951 Manual required dismissal if confinement were to be imposed and since a special court–martial could not sentence an officer to dismissal, there was no occasion at that time to provide that a special court–martial could not sentence an officer to confinement. When the earlier limitation was deleted, the President imposed a limitation on the authority of special courts–martial to sentence officers to confinement.

In light of the unique special position of honor and trust enjoyed by an officer and the concern with which any deprivation of liberty is viewed, *cf. Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), it is quite understandable why the President determined that an officer should only be sentenced to confinement by the highest military tribunal. In any event, such a decision was clearly within his power under Article 19 of the Uniform Code, which authorizes the President to prescribe limitations on the punishments a special court–martial may adjudge.

## IV

We find no error prejudicial to the rights of the appellant.[8] Therefore, the decision of the United States Air Force Court of Military Review is affirmed.

Judges COOK and FLETCHER concur.

---

7. Apparently this change in paragraph 126*d*–and a similar change in paragraph 126*a*–were in response to *United States v. Varnadore*, 9 U.S.C.M.A. 471, 26 C.M.R. 251 (1958). *See* Analysis of Contents, Manual for Courts–Martial, United States, 1969, Revised edition (DA Pamphlet 27–2, July 1970).

8. We note allegations in the trial defense counsel's response to the staff judge advocate's review that, after the trial, the Staff Judge Advocate at Headquarters, United States Air Forces, Europe, had telephoned the Chief Judge of the judicial circuit in which the appellant had been tried to ask why the trial judge had permitted defense counsel to call a member of the Staff Judge Advocate's staff for testimony on the issue of selective prosecution. Additionally,

trial defense counsel discussed several other alleged incidents, unrelated to this case but involving the same SJA, which he asserted reflect a "continuous disregard . . . for the sanctity of the military justice system, in particular, the independent trial judiciary . . ." Even if these allegations were entirely accurate, there was no showing that the appellant was prejudiced here by this conduct. *See United States v. Ledbetter*, 2 M.J. 37 (C.M.A.1976). Thus, the Court did not assign any issue related to this matter. However, any such contacts with a military judge may create a possibility of criticism and mistrust which must be avoided. *Cf. United States v. Walters*, 4 U.S.C.M.A. 617, 630, 16 C.M.R. 191, 204 (1954).