## UNITED STATES

v.

**Airman First Class William P. PAPPAS, FR 175–58–1798, United States Air Force.**

**ACM 27834.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 21 April 1989.

Decided 16 Feb. 1990.

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair and Captain Darla G. Orndorff.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Major Terry M. Petrie, Captain James C. Sinwell and Captain David G. Nix.

Before FORAY, LEONARD and MURDOCK, Appellate Military Judges.

## DECISION

LEONARD, Judge:

Appellant was found guilty by court members of use of cocaine based on a positive urine sample submitted during a unit urinalysis inspection. His basis for appeal is that the unit urinalysis inspection did not meet the requirements of equal protection under the Fifth Amendment of the United States Constitution or Mil.R. Evid. 313(b) and the military judge erred in denying his motion to suppress the positive test results on the urine sample taken from him during that inspection. We disagree and find no merit to appellant's assertions.

In his first attack, the appellant, an enlisted person, maintains that he was denied equal protection under the law because his commander's order to produce a urine sample for the inspection was not equally enforced with respect to the officer and enlisted personnel selected for testing.

The appellant was a new arrival at the Torrejon Air Base Hospital. The squadron section commander and commander had decided before his arrival to conduct a urinalysis inspection of the unit. Approximately one-third of the unit personnel were officers. The commander's final order listed 28 officers and 46 enlisted personnel who had been identified by a random selection process for urinalysis testing. Nine of the persons listed on the commander's order failed to appear and submit a urine specimen. Two individuals had been reassigned out of the unit and two individuals had not yet arrived. Two officers and one enlisted person were on temporary duty assignments (TDY) at other locations. One officer was on a break and another officer was still in-processing to the unit and not present for duty. Although the appellant was also still in-processing, he was located and he provided a specimen on the testing date. The final count of individuals tested was 22 officers and 45 enlisted personnel.

The Base Urinalysis Testing Program Operating Instruction provided that personnel who were absent on the testing date due to leave or TDY, would be tested upon their return to duty with the unit. However, the two officers and one enlisted person who were TDY, the officer on break and the officer in-processing were not tested when they returned to duty. The parties stipulated that the failure to test these individuals was not due to a conscious decision or affirmative action on the part of the commander, squadron section commander or first sergeant, but was the result of "command oversight and inattention" to the responsibilities contained in the Base Urinalysis Testing Program Operating Instruction.

After considering the evidence presented on this matter, the military judge found no discrimination in favor of officers with respect to the urinalysis testing procedure used to secure appellant's urine sample, and he denied appellant's motion to suppress his positive urinalysis result. Appellant maintains that the military judge erred because command "discretionary inaction" with respect to officers selected for testing at the same time as the appellant resulted

in a violation of appellant's Fifth Amendment rights to equal protection under the law.

A violation of equal protection under the due process clause of the Fifth Amendment based on constitutionally suspect classifications or involving encroachments on fundamental constitutional rights will be subject to strict judicial scrutiny. *United States v. Batchelder*, 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979); *United States v. Means*, 10 M.J. 162 (C.M.A.1981). An accused alleging that unjustifiable discrimination by the government violates Fifth Amendment due process must present some evidence that the government is making a distinction based on a suspect classification or that encroaches on fundamental rights. *United States v. Rodriguez–Amy*, 19 M.J. 177 (C.M.A.1985).

 We agree with the military judge's finding that the appellant failed to present any evidence establishing any conscious distinction made by the government that amounted to discrimination in favor of officers or against enlisted personnel with respect to appellant's urinalysis. Even if the appellant had been able to present evidence of conscious discrimination in favor of officers or against enlisted personnel in the conduct of the urinalysis, it would not have risen to the level of a Fifth Amendment due process violation. Appellant concedes that such discrimination would not have encroached on a constitutionally protected fundamental right. Further, the distinction between military officers and enlisted personnel is not a constitutionally suspect classification. 10 M.J. at 165. Therefore, as the appellant correctly points out, any discrimination in favor of officers in the testing procedure would not be subject to a strict scrutiny standard. The correct test to be applied would be to determine whether a legitimate government interest was being accomplished by reasonable or rational means. *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). Urinalysis testing of members of a unit to ensure the fitness of individual members to perform their duties and to ensure the ability of the unit to discharge its Air Force missions is advancement of a legitimate government interest. Further, in performing urinalysis testing of personnel assigned to a hospital, a commander could have a number of valid rational and reasonable reasons to excuse certain classes or types of personnel, such as officers or certain officers providing critical health care, from testing without creating an equal protection violation of the Fifth Amendment.

 The second assertion of error is that the urinalysis inspection in which appellant provided his positive urine sample was not a valid inspection under Mil.R. Evid. 313(b) and the military judge should have suppressed his test results. Appellant's position is that the purpose of the inspection was to locate contraband and the inspection procedures subjected the appellant to a greater degree of intrusion than the officer who was in the same status as appellant, i.e. in-processing. Therefore, appellant maintains that the military judge erred in refusing to require the government to prove the legitimacy of the inspection by clear and convincing evidence. To support his argument, appellant relies on the case of *United States v. Parker*, 27 M.J. 522 (A.F.C.M.R.1988).

Appellant's reliance on *Parker* is only partially correct. Mil.R.Evid. 313(b) provides that an examination made for the primary purpose of obtaining evidence for use in a trial by court-martial is not a valid inspection. The rule then establishes a three step test to apply to inspections that may be suspect. The first step of the test is to determine whether a purpose of the inspection is to locate weapons or contraband. If such a purpose is not present, this factor weighs in favor of a valid inspection and the government's burden of proof is only by a preponderance of the evidence. MCM, App. 22, Rule 313, A22–24 (1984).

In *Parker*, our court concluded that urinalysis inspections are specifically designed to detect the presence of contraband, i.e. use of controlled substances. 27 M.J. at 525. This conclusion is supported by the

drafter's analysis of the rule which provides:

> An inspection which has as its intent, or one of its intents, in whole or in part, the discovery of contraband, however slight, must comply with the specific requirements set out in the Rule for inspections for contraband.... Contraband is defined as material the possession of which is by its very nature unlawful.

MCM, App. 22, Rule 313, A22–22 (1984).

If a purpose of the inspection is the discovery of contraband, the second step is to determine the government's burden of proof. The government's burden of proving the legitimacy of the inspection will require clear and convincing evidence if:

> (1) the examination was directed immediately following a report of a specific offense in the unit, organization, installation, vessel, aircraft, or vehicle and was not previously scheduled; (2) specific individuals are selected for examination; or (3) persons examined are subjected to substantially different intrusions during the same examination.

Mil.R.Evid. 313(b). In the absence of one of these factors, the government's burden of proof remains at a preponderance of the evidence. MCM, App. 22, Rule 313, A22–24.

Appellant asserts his case is very similar to *Parker* where the presence of the third factor required the clear and convincing evidence burden. 27 M.J. at 527. We disagree. In the *Parker* case, there was a conscious command decision to excuse one of the twelve persons randomly selected for testing. Airman Parker and a staff sergeant were both part of the original random selection and were unable to provide urine samples during the normal testing period. Both individuals were directed to report to the hospital laboratory the next day to provide a sample. Subsequent to this direction, the commander excused the staff sergeant from providing a sample. Airman Parker was not excused and provided a sample that tested positive. The appellant asserts that the *Parker* fact situation is very close to the fact situation in his case where appellant and a lieutenant

were both in-processing, but only the appellant was required to test.

The critical difference between appellant's case and the *Parker* case is that, in appellant's case, there is no evidence of any conscious command decision to excuse from testing the lieutenant or anyone else who was randomly selected and listed on the commander's order to report for testing. On the contrary, appellant's first sergeant testified that he and the clerks in his orderly room made every effort to contact everyone who was listed on the order. They were unsuccessful in contacting the in-processing lieutenant because they could not find him on the base and he had no off base phone. At the end of the day, the first sergeant provided the squadron section commander a list of all the persons not contacted. The parties stipulated that the failure of the squadron section commander or hospital commander to follow up and ensure the absent persons tested upon return to duty was due to "oversight and inattention" and was not part of some "affirmative action".

The three factors in Mil.R.Evid. 313(b) that require contraband-seeking inspections to show clear and convincing evidence of legitimacy were all based on some element of suspect command motive that create a strong likelihood of subterfuge. MCM, App. 22, Rule 313, A22–23 (1984). All of the factors, by their very nature, require some type of conscious decision or action on the part of the commander directing the inspection and they all had their basis in case law predating the current version of Mil.R.Evid. 313(b). *See United States v. Brown*, 12 M.J. 420 (C.M.A.1982); *United States v. Middleton*, 10 M.J. 123 (C.M.A. 1981); *United States v. Lange*, 15 U.S.C. M.A. 486, 35 C.M.R. 458 (1965); *United States v. Hay*, 3 M.J. 654 (A.C.M.R.1977).

The factor in question in this case—subjecting the persons under examination to substantially different intrusions—is based on the *Hay* and *Brown* cases. In the *Brown* case, an individual soldier's personal papers were examined during a "health and welfare inspection". In the *Hay* case, a soldier was required to empty his pockets

 

during a "health and welfare inspection" to look for contraband. In both cases, the courts held that the degree of intrusion directed by the commander was greater than necessary to accomplish the purposes of a health and welfare inspection and the inspections were illegal searches. 12 M.J. at 423; 3 M.J. at 656.

We hold that any distinction with respect to the degree of intrusion affecting persons selected for urinalysis inspection must be based on a conscious command decision in order to trigger the clear and convincing burden of proof under Mil.R.Evid. 313(b).

Therefore, turning to the third step in the analysis, we find the military judge applied the correct burden of proof in this case and correctly determined that the urinalysis inspection in question was legitimate.

Finally, even if it were necessary to apply a clear and convincing evidence burden of proof to a urinalysis inspection, the burden would not be impossible to overcome. If it is clear that the primary purpose of the inspection was to determine the fitness of the unit and individuals assigned to the unit to perform their individual missions and the unit's missions, the inspection will be valid even if a secondary purpose of the inspection is to maintain unit discipline by prosecuting those found to be drug users. MCM, App. 22, Rule 313, A22–22 (1984). Further, when the unit is a hospital, as it was in this case, it would seem that command would naturally be most concerned about the abilities of assigned personnel to perform critical, life saving functions without drug impairment of judgement or technical skills. Any disciplinary actions flowing from a positive urinalysis discovered during an inspection of the hospital staff should be only a secondary concern.

Having examined the record of trial, the assignment of errors, and the government's reply, we conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the accused was committed. The findings of guilty and the sentence are

AFFIRMED.

Senior Judge FORAY and Judge MURDOCK concur.